**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| STEVEN J. BUCHHOLTZ, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> MICHAEL J. ASTRUE, Commissioner ) <br> of Social Security, ) <br> ) <br> Defendant. ) | No. 12 C 7399 <br><br> Magistrate Judge Rowland |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Steven J. Buchholtz, brings this action pursuant to 42 U.S.C. 405(g), seeking judicial review of the Social Security Commissioner's denial of his application for Supplemental Security Income (SSI) under the Social Security Act. 42 U.S.C. § 1381(a). For the reasons set forth below, the Court remands this case for further proceedings consistent with this opinion.

**I. Procedural History**

Mr. Buchholtz applied for SSI on March 2, 2010, at the age of 44. (R. 141). He claimed disability based on depression/bi-polar disorder. He claimed a disability onset date of January 1, 2000. (R. 156-57). The Social Security Administration denied his claims initially and then again on reconsideration. (R. 30-31). Mr. Buchholtz requested a hearing before an Administrative Law Judge ("ALJ"), which was held in Chicago on May 11, 2011. (R. 10).

On June 28, 2011, the ALJ issued a written opinion finding that Mr. Buchholtz was not disabled under the Social Security Act. (R. 24). The ALJ found

that Mr. Buchholtz had a substance abuse disorder, and that if he stopped his substance abuse, he would have the functional capacity to maintain employment in a job that required neither intense concentration nor prolonged social interaction. (R. 21). On July 19, 2012, the Appeals Council declined to review the ALJ's decision, rendering that decision final and appealable. (R. 1-4).

## II. Summary of Administrative Record

Mr. Buchholtz was born on January 22, 1966. (R. 95). He was raised by his mother and grandmother. (R. 97). His mother suffered from schizophrenia. (R. 434, 627). Mr. Buchholtz began drinking at age 11, and has a long history of substance abuse and mental health problems. (R. 373, 403, 433). In 2000, Mr. Buchholtz's grandmother was placed in a nursing home. Because she handled the household finances, her departure led to unpaid property taxes, and the eventual loss of the family's home. (R. 120). By 2005, Mr. Buchholtz's mother was also in a nursing home, and he was effectively homeless.

Mr. Buchholtz suffers from depression, which worsened after 2005. Between May 2008 and October 2009, Mr. Buchholtz was hospitalized eight times for depression and suicidal ideation. (R. 249, 316, 373, 393, 403-06, 414, 430, 509, 517). Following his October 29, 2009 discharge from the Lake County Mental Health Department, Mr. Buchholtz entered a residential program for patients suffering from mental illness and substance abuse called Haymarket Center. During his six-month stay at that facility, Mr. Buchholtz applied for social security benefits. On April 22, 2010, Buchholtz attended his Social Security Administration ("SSA")

2

consultative psychiatric examination. (R. 568-72). By that time, he had been with Haymarket for six months, and had remained sober during that time, but was scheduled to be released in May 2010. During his examination, Mr. Buchholtz reported difficulty concentrating; decreased energy; and feelings of hopelessness, helplessness, worthlessness, and inability to feel pleasure. He denied suicidal intent or plan, but stated that he did think about suicide. Mr. Buchholtz expressed fear about his upcoming release from Haymarket. (R. 568). The examiner, Dr. Anan Gil, observed a mildly anxious affect and a moderately depressed mood. (R. 570). She diagnosed Mr. Buchholtz with a moderately severe depressive disorder and past history of alcohol and cannabis dependence. (R. 571).

On May 15, 2010, a non-examining psychiatrist, Lionel Hudspeth, reviewed Mr. Buchholtz's medical file for the Social Security Administration, and completed a Psychiatric Review Technique and Mental Residual Functional Capacity Assessment. (R. 576-89, 590-90). Dr. Hudpseth opined that, assuming Mr. Buchholtz could maintain his sobriety, he would be able to "carry out at least two to three step tasks." (R. 592).

Mr. Buchholtz was released from Haymarket's residential treatment facility on May 19, 2010. Less than two months later, on July 7, 2010, he was admitted to Madden Mental Health Center for suicidal ideation. (R. 597-98). He was discharged, and then, on August 19, 2010, he was admitted to Mount Sinai after police stopped him from jumping off a bridge. (R. 630). Mr. Buchholtz was held until August 27,

3

2010, and soon thereafter transferred to Thresholds, another residential treatment program. (R. 649).

Jessica Cardinale, a case manager and mental health practitioner from Thresholds completed a Mental Residual Functional Capacity Assessment for Mr. Buchholtz on April 25, 2011. (R. 666-67). She stated that Mr. Buchholtz lacked the capacity to maintain employment, and that his severe limitations would persist even if he stopped his substance abuse. (R. 667). Steven Henley, another case manager from Thresholds, completed the same form. (R. 662-63). He also opined that Mr. Buchholtz would be severely limited, irrespective of his sobriety. (R. 663)

Finally, the ALJ considered the opinion of a vocational expert, Grace Gianforte. Ms. Gianforte testified that there would be jobs in the national economy for someone with the following limitations: marginal education and no past relevant work; inability to understand, remember, and carry out detailed and complex job instructions; inability to exercise intense focus and concentration for extended periods; limited ability to interact with the general public. Those jobs would include cleaner, laundry worker, and hand packer. (R. 130-31). Ms. Gianforte also testified, however, that if Mr. Buchholtz was as severely limited as his case managers described in their assessments, there would be no jobs available.

### III. Standard of Review

The standard of review of an appeal from the Social Security Administration denying disability benefits is well established. To establish a "disability" under the Social Security Act, a claimant must show an "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A claimant must demonstrate that his impairments prevent him from performing not only past work, but also any other work that exists in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A).

The regulations under the Social Security Act set forth a five-step process to determine whether a person is disabled. 20 C.F.R. § 404.1520(a)(4). Under these regulations, an ALJ must consider (1) whether the claimant presently has substantial, gainful employment; (2) whether the claimant's alleged impairment or combination of alleged impairments is severe; (3) whether the claimant's impairment(s) meet(s) or equal(s) the specific impairments that are listed in the appendix to the regulations as severe enough to preclude gainful employment; (4) whether the claimant is unable to perform his or her past relevant work; and (5) whether the claimant is unable to perform any other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 404.1520(b)-(f); *see also Young v. Sec'y of Health and Human Serv.*, 957 F.2d 386, 389 (7th Cir. 1992).

A finding of disability requires an affirmative answer at either Step 3 or Step 5. *See* 20 C.F.R. § 404.1520(a)(4). A negative answer at any step other than Step 3 precludes a finding that the claimant is disabled. *Young,* 957 F.2d at 388. The claimant bears the burden of proof at Steps 1-4. In cases of severe impairment, the

ALJ's analysis typically involves an evaluation of the claimant's residual functional capacity ("RFC") to perform past relevant work. *See* 20 C.F.R. § 404.1520(e). This RFC is used for purposes of Step 4 to determine whether the claimant may work in his or her previous occupations. *Id.*

At Step 5, the burden shifts to the Commissioner, who must "provid[e] evidence showing that other work exists in significant numbers in the national economy that [the claimant] can do, given [his] residual functional capacity and vocational factors." 20 C.F.R. § 404.1560(c)(2). If a claimant's RFC allows him to perform jobs that exist in significant numbers in the national economy, then the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1).

In reviewing the ALJ's decision, courts may not decide facts anew, reweigh evidence, or substitute their judgment for the articulated judgment of the ALJ. *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir. 1994). The reviewing court will uphold the Commissioner's decision if it is supported by "substantial evidence," and is free of legal error. 42 U.S.C. § 405(g) (2004); *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dray v. R.R. Retirement Bd.,* 10 F.3d 1306, 1310 (7th Cir. 1993) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). If conflicting evidence would allow reasonable minds to differ, the responsibility to determine disability belongs to the Commissioner (and ALJ, by extension), not the courts. *See Heir v. Sullivan,* 912 F.2d 178, 181 (7th Cir. 1990); *see also Stuckey v. Sullivan,* 881 F.2d 506, 509 (7th Cir. 1989) (the ALJ has the

authority to assess medical evidence and give greater weight to evidence that the ALJ finds more credible).

However, an ALJ is not entitled to unlimited judicial deference. An ALJ must "build an accurate and logical bridge from the evidence to [his or] her conclusion," *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001), and "must confront the evidence that does not support his [or her] conclusion and explain why it was rejected." *Indoranto v. Barnhart,* 374 F.3d 470, 474 (7th Cir. 2004). The ALJ must consider all relevant evidence, and may not choose to disregard certain evidence or discuss only the evidence that favors his or her decision. *See Herron,* 19 F.3d at 334. Although the ALJ need not evaluate in writing every piece of evidence in the record, the ALJ must state the reasons he or she accepted or rejected "entire lines of evidence." *Id.* at 333; *see also Young,* 957 F.2d at 393 (in order for there to be a meaningful appellate review, the ALJ must articulate a reason for rejecting evidence "within reasonable limits"). The written decision must include specific reasons that explain the ALJ's decision, so that the reviewing court can ultimately assess whether the determination was supported by substantial evidence or was "patently wrong." *Zurawski v. Halter,* 245 F.3d 881, 887 (7th Cir. 2001) (quoting *Powers v. Apfel,* 207 F.3d 431, 435 (7th Cir. 2000)).

**IV. Discussion**

Mr. Buchholtz raises three arguments in support for his request for reversal and remand: (A) the ALJ should have found that Mr. Buchholtz's impairments meet or equal one of the "presumptively disabling" impairments found in Appendix

7

Listing 12.04(C); (B) the ALJ improperly rejected the opinions of Mr. Buchholtz's case workers, Ms. Cardinale and Mr. Henley; and (C) the Appeals Council erred in finding that supplemental evidence submitted to it was not "new and material." Because the first two arguments are closely related, the Court will address them together below.

In this case, the ALJ found that Mr. Buchholtz's impairments met Listings 12.04 (affective disorders) and 12.09 (substance addiction disorders)[1], which would normally make him presumptively disabled under the Social Security Act. However, the ALJ found that Mr. Buchholtz's drug and alcohol use were effectively *causing* his impairments, and that if he could achieve sobriety, his impairments would not be severe enough to satisfy the requirements of the Listings noted above. This conclusion contradicted the assessments of Mr. Buchholtz's case workers, which stated that Mr. Buchholtz's substance abuse did not cause his mental instability.

In 1996, Congress enacted Public Law 104–121, which provides in relevant part that an individual cannot be considered disabled if drug addiction or alcoholism would be "a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). When there is medical evidence showing that the claimant has drug or alcohol addiction, the Social Security Administration considers whether the claimant would be found to be disabled if his alcohol or drug use stopped. 20 C.F.R. § 416.935. The applicable regulation states:

---

[1] 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d)).

(a) General. If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.

(b) Process we will follow when we have medical evidence of your drug addiction or alcoholism.

    (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.

    (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.
20 C.F.R. § 416.935.

Thus, the Social Security Administration must first make a disability determination irrespective of substance abuse; then, it considers what limitations, if any, would remain if the claimant's drug or alcohol addiction was absent. If the claimant's limitations absent substance abuse would not prevent him or her from working, then drug or alcohol addiction is "material" to the disability determination and the claimant cannot receive benefits. 20 C.F.R. § 416.935(b)(2)(i).

As noted above, the ALJ in this case determined that Mr. Buchholtz was not entitled to benefits because his substance abuse was "material" to the disability determination. The ALJ based that conclusion on what he viewed as a temporal correlation between Mr. Buchholtz's periods of sobriety and his periods of improved mental functioning. The ALJ wrote: "The record shows that almost all of the claimant's decompensations were accompanied by significant poly-substance abuse

9

and that after being separated from alcohol or other substances, the claimant made significant recovery." (R. 20)

The Court finds that the ALJ erred in reaching that conclusion. While it is true that Mr. Buchholtz's periods of sobriety were correlated to his periods of improved mental functioning, that correlation alone cannot support a finding of causation. Instead, it is just as likely that improvements in Mr. Buchholtz's mental stability, and the concurrent reduction in his drug abuse, were both caused by a *common* factor: his housing in a residential treatment facility. When Mr. Buchholtz had access to residential treatment he was much more likely to maintain both mental functioning *and* sobriety.

Thus, the ALJ needed additional evidence to conclude that Mr. Buchholtz's substance abuse was a material cause of his disability. The ALJ made multiple references to the consultative exam performed by Dr. Gil. Dr. Gil examined Mr. Buchholtz on April 22, 2010, and described him as having a mildly anxious affect and moderately depressed mood, but well-groomed, cooperative, engaging, friendly, and polite. (R. 20). Aside from offering his opinion about Mr. Buchholtz's mental state while he was receiving residential treatment, Dr. Gil offered no opinion about the interrelatedness of Mr. Buchholtz's level of functioning and his substance abuse. Nonetheless, the ALJ relied on Dr. Gil's assessment to support his conclusion that Mr. Buchholtz's alcohol abuse was a but-for cause of his decompensations and other severe impairments. But, again, the ALJ failed to consider that the exam took place

during Mr. Buchholtz's stay in a residential treatment facility, where he had ready access to a variety of mental health and social services for several months.

The only sources that did offer an opinion about the interrelatedness of Mr. Buchholtz's drug abuse and his level of functioning were his case managers at Thresholds, Jessica Cardinale (R. 626-27; 666-67) and Steven Henley (R. 662-63). Ms. Cardinale opined that, even when sober, Mr. Buchholtz experienced severe limitations as a result of his mental illness, such as enormous difficulty relating to others; excessive guilt and feelings of worthlessness; obsessiveness leading to impaired concentration; and a shaky, rigid affect. (R. 626). She explained that, without residential treatment, his condition would deteriorate markedly, and one could expect him to either attempt suicide or self-medicate by binge drinking. (*Id.*) Mr. Henley's assessment, although not as detailed, also concluded that the cessation of Mr. Buchholtz's drug abuse would not alleviate his mental health impairments. (R. 663).

Mr. Buchholtz now argues that the ALJ improperly rejected his case workers' opinions. The Court agrees. The ALJ accorded little weight to the opinions of Ms. Cardinale and Mr. Henley on the grounds that they "provided social services and not mental health treatment and thus [are] not acceptable medical source[s]." R. 22). But, as Mr. Buchholtz points out, non-medical sources can still be used to show the severity of a claimant's impairments as well as their functional effects. 20 C.F.R. §416.913(d); *see also Eggerson v. Astrue,* 581 F. Supp. 2d 961, 966 (N.D. Ill. 2008) (while physician's assistant was not "acceptable medical sources," he was still

11

a valuable "other source" for information regarding severity claimant's impairment, treatment, and how such impairment can affect an individual's ability to function). Indeed, Social Security Ruling 06-03p provides that "[o]pinions from 'non-medical sources' who have seen the individual in their professional capacity should be evaluated by using the applicable [regulatory] factors" set forth in 20 C.F.R. §416.927(d). These are the same factors the ALJ uses to evaluate medical evidence from acceptable medical sources such as, for example: how long the source has known the individual; how consistent the opinion is with other evidence; the degree to which the source presents relevant evidence to support an opinion; how well the source explains the opinion; whether the source has a specialty or area of expertise related to the individual's impairment(s); and any other factors that tend to support or refute the opinion.

In this case, the ALJ found that Ms. Cardinale and Mr. Henley were not qualified to give medical opinions. The ALJ should then have evaluated their assessments as non-medical "other sources" under Ruling 06-03p, weighing the above factors and providing an adequate explanation for any decision to reject their assessments. Because the ALJ failed to make that evaluation, and failed to provide a sufficient basis for concluding that Mr. Buchholtz's substance abuse was a material factor in his disability determination, the case must be remanded for reconsideration.

## V. CONCLUSION

For the reasons stated above, and pursuant to 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: February 21, 2014

MARY M. ROWLAND
United States Magistrate Judge